**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GARY A. MOSCORELLI, | ) | CASE NO. 1:15-CV-1509 |
| | ) | |
| Plaintiff, | ) | JUDGE LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Gary Moscorelli ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

On April 13, 2012, Plaintiff filed his applications for POD and DIB, alleging a disability onset date of March 1, 2012.  (Transcript ("Tr.") 12.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On December 17, 2013, an ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and

testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On March 17, 2014, the ALJ found Plaintiff not disabled.  (Tr. 21.)  On May 29, 2015, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)  On July 31, 2015, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 13, 15, 16.)

Plaintiff asserts the following assignment of error: (1) whether the radiological tests of Plaintiff's shoulders and lumbar spine and the treatment records of Mark Verdun, D.O., constitute new and material evidence warranting a sentence six remand; (2) the ALJ improperly evaluated Plaintiff's degenerative disc disease at Step Three of the sequential evaluation; and (3) the RFC finding is insufficient to accommodate Plaintiff's limitations.  (Doc. No. 13.)

## II.   EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in July 1962 and was 49-years-old on the alleged disability onset date, rendering him a "younger person" pursuant to 20 C.F.R. § 404.1563(c).[1] (Tr. 20.)  He had at least a high school education and was able to communicate in English.  (*Id.*)  He had past relevant work as a punch press operator, roofer, construction worker, production worker, and factory worker.  (*Id.*)

---

[1] Approximately five months after the alleged onset date, Plaintiff turned 50, rendering him a "person closely approaching advanced age."  *See* 20 C.F.R. § 404.1563(d).

**B.    Medical Evidence**

    **1.    Medical Reports**

       **a.  Pre-hearing Evidence**

On May 23, 2011, chiropractor Norman Gloekler, D.C., ordered an x-ray of Plaintiff's lumbar spine, which revealed Grade I spondylolisthesis of L5 and moderate disc degeneration at L3-4/L4, L4/L/5 with posterior disc wedging and facet imbrication. (Tr. 226.)  Physical examination revealed decreased range of motion in the lumbar spine, positive straight-leg raise test, positive Slump's test on the left, and moderate bilateral tenderness in the lumbosacral spine with considerable spasm.  (Tr. 225.)

On June 15, 2011, Plaintiff reported to the Emergency Room ("ER") for lower back pain (Tr. 233-36.)  He reported injuring himself at work three weeks earlier.  (Tr. 233.)  He was diagnosed with sciatica.  (Tr. 236.)

On June 15, 2012, Dr. Gloekler reported treating Plaintiff between May 23, 2011 and August 29, 2011 for disc herniation with left leg radiculopathy, but stated that he had not treated Plaintiff in ten months.  (Tr. 223-24, 274-87.)  Dr. Gloekler noted Plaintiff had been limping for several weeks, had "[d]ecreased lumbar range of motion 50%," and walked with a cane.  (Tr. 224.)

       **b.  Post-hearing Evidence[2]**

On March 25, 2014, approximately a week after the ALJ issued his decision, Plaintiff presented to Mark Verdun, D.O., for complaints of lower back pain.  (Tr. 316.)

---

[2]  The following evidence was not before the ALJ and was first submitted to the Appeals Council on January 9, 2015.  (Tr. 298.)  This evidence forms the basis of Plaintiff's request for a sentence six remand.

Dr. Verdun observed Plaintiff had a "narrow based steady gait," could perform toe and heel rises without difficulty, had no strength or sensory deficits in his lower extremities, and deep tendon reflexes were symmetrical and intact.  (*Id*.)  All other tests were negative, but there was some decreased sensation over the L5 nerve distribution in the left foot.  (*Id*.)

On the same date, March 25, 2014, an x-ray of Plaintiff's cervical spine revealed degenerative change and past fusion of  C3 and C4.  (Tr. 325.)  Claudia Chapek, M.D., interpreted the x-ray, and noted as follows: vertebral body heights and other disc space levels were maintained; there was no acute fracture or prevertebral soft tissue swelling; there was moderate to severe narrowing of the left C3-C4 foramen; and there was mild to moderate narrowing of the C4-C5 and C5-C6 foramina.  (*Id*.)  An x-ray of Plaintiff's right shoulder, interpreted by Thomas Jones, M.D., revealed mild degenerative changes of the acromioclavicular joint and ossific density superior to the distal clavicle likely related to remote trauma.  (Tr. 319.)

On March 29, 2014, an MRI of Plaintiff's lumbar spine, interpreted by Domsu Moon, M.D.,  yielded the following impression: moderate degenerative disc disease of the lower lumbar spine; bilateral chronic L5 pars fractures; and moderate-severe bilateral L5-S1 and right L4-L5 neural foraminal stenoses.  (Tr. 313-14.)

On April 11, 2014, a second x-ray of Plaintiff's right shoulder was interpreted by Dr. Jones, who noted no significant change since the comparison study from March 25, 2014.  (Tr. 311.)  On the same date, Dr. Verdun told Plaintiff he should be evaluated by a spine surgeon and told him to initiate pain management.  (Tr. 306.)  Plaintiff was not using a cane, walker, or wheelchair.  (Tr. 307.)

4

On July 5, 2014, an MRI of Plaintiff's left hip revealed degenerative arthrosis and a tear of the superolateral labrum.  (Tr. 301.)

On July 29, 2014, Dr. Verdun told Plaintiff that he did not believe surgery on his left hip would be fruitful, as he indicated Plaintiff's symptoms stem from his lower back problems.  (Tr. 299.)  Plaintiff reported that he had seen a spine surgeon, who recommended fusion but wanted Plaintiff to first quit smoking.  (*Id.*)

### 2.  Agency Reports[3]

#### a. Psychological/Mental Condition

On July 9, 2012, psychologist Richard C. Halas, M.A., performed a consultative psychological examination.  (Tr. 244-47).  Halas diagnosed Plaintiff with Dysthymia, Alcohol Abuse Disorder, and Mixed Personality Disorder.  (Tr. 246-47.)  He was assigned a Global Assessment of Functioning ("GAF") score of 45, though it was noted that Plaintiff's functional severity was 55.[4]  (Tr. 247.)  Halas opined Plaintiff had little or no difficulty understanding, remembering and carrying out instructions; little or no difficulty maintaining concentration, persistence, and pace to perform simple or multi-

---

[3]   All of the reports discussed below were completed prior to the hearing held before the ALJ.

[4]   The GAF scale reports a clinician's assessment of an individual's overall level of functioning.  *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) ("DSM-IV").  An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments.  A GAF score between 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning, while A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty.  DSM-IV at 34.  A recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice."  *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

step tasks; little or no difficulty responding appropriately to work pressure in a work setting; but did have significant psychological and emotional problems that likely would interfere with his ability to respond appropriately to supervisors and co-workers.  (Tr. 247.)  Halas felt Plaintiff could not manage funds in an appropriate manner due to a history of substance abuse.  (*Id.*)

On the same date, July 9, 2012, State Agency psychological consultants concluded that Plaintiff had no more than moderate limitations, but should be "limited to simple and routine tasks in an environment without frequent social demands or strict quota/production demands."  (Tr. 59-60.)   State Agency consultants also noted that Plaintiff should not work directly with the general public and his work should be "routine."  (Tr. 73-74.)

On November 19, 2012, State Agency psychiatric consultant Robyn Hoffman, Ph.D., concluded Plaintiff had an affective disorder, substance abuse disorder, and personality disorder that were all "severe."  (Tr. 68-69.)  With respect to the "B" criteria of the 12.00 listings, Plaintiff had moderate restrictions in activities of daily living; moderate difficulties maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation of an extended duration.  (Tr. 69.)

**b.  Physical Condition**

On August 18, 2012, Wilfredo Paras, M.D., conducted a consultative examination.  (Tr. 249-54.)  "On manual muscle testing and range of motion examination, [Plaintiff] had pain in the back of the neck on limited range of motion of the cervical spine, pain in the shoulders on limited range of motion of the shoulders, pain in

6

the low back on limited range of motion of the dorsolumbar spine, pain in the low back on limited flexion of the left hip, and pain in the left shoulder on full motion of the left shoulder." (Tr. 250, 252-54.) Dr. Paras concluded that "[h]is general work limitation at this time appears to be light work." (Tr. 250.)

On September 24, 2012, State Agency medical consultant Sarah Long, M.D., concluded Plaintiff's degenerative disc disease and major joint dysfunction were medically determinable severe impairments. (Tr. 55.) Dr. Long opined that Plaintiff, in an 8-hour workday, could lift 10 pounds frequently and 20 pounds occasionally, stand and/or walk for 6 hours, and sit for 6 hours. (Tr. 57.) In addition, Plaintiff could frequently climb ramps/stairs, occasionally stoop, and never climb ladders, ropes, or scaffolds. (Tr. 58.) Finally, Plaintiff could perform only limited overhead reaching bilaterally, but was otherwise unlimited in his ability to handle, finger, and feel. (*Id*.)

On November 20, 2012, State Agency physician Michael Lehv, M.D., reviewed Plaintiff's file and affirmed Dr. Long's earlier opinion. (Tr. 71-72.)

On November 4, 2013, at the request of the Ohio Department of Job and Family Services, Plaintiff underwent a functional capacity evaluation performed by Gregory Brant, D.O. (Tr. 291-96.) Dr. Brant's physical examination revealed tenderness and spasm in the cervical and lumbar spine, as well as tenderness, spasm, and scoliosis in the thoracic spine. (Tr. 292.) He had an antalgic gait, was unable to perform a heel/toe walk, but did not need an assistance device or ambulation. (*Id*.) Range of motion testing and manual muscle testing was similarly abnormal. Range of motion on flexion in his back was reduced to 35%, but was within normal limits on extension. (*Id*.) Straight-leg raise testing was positive bilaterally. (*Id*.) Dr. Brant opined Plaintiff had

7

moderate limitations in the categories of standing, walking, reaching, seeing, and fine

motor movements and extreme limitations in his ability to lift/carry, push/pull, bend, and

perform repetitive foot movements.  (Tr. 294.)  Plaintiff did not have any issue with

activities of daily living.  (Tr. 295.)

## C.    Hearing Testimony

### 1.    Plaintiff's Hearing Testimony

At the December 17, 2013 hearing, Plaintiff testified as follows:

- He was 51 years old, completed high school, and has a technical degree in automotive engineering.  (Tr. 30-31.)

- His back and shoulders are "shot," the former due to what a chiropractor told him was a wedged disc, which puts pressure on his sciatic nerve. (Tr. 31-32.)

- He has a liver problem and quit drinking alcohol five years earlier.  (Tr. 32.)

- On an average day, he wakes up at 3:30 a.m. due to leg cramps.  He drinks coffee and watches the news until dawn.  He usually tries to take his dog for a walk.  He sits in the hot tub for 45 minutes to loosen up his back, followed by the application of Bengay and heat to his back. Thereafter, he eats breakfast.  The remainder of the day, he either sits down, watches television, or lays down flat.  Occasionally, he attempts to do the laundry or help his parents around the house.  If he does not power nap throughout the day, he goes to bed around 9 p.m.  (Tr. 32-33.)

- He takes Bayer aspirin, because he has no insurance and "no doctors to prescribe me medication."  (Tr. 33.)  He has not taken any steps to obtain insurance because he is destitute.  (Tr. 36.)  He was waiting for a decision from the Ohio Department of Job and Family Services.  (Tr. 37.)

- He cannot bend over to tie his shoes, so he wears slip-on shoes.  (Tr. 33.)  However, he can manage with putting on his pants.  (Tr. 36.)

- His back wore out from his repetitive job, which was operating a punch press.  That job required him to stand all day long and to lift parts

weighing 25 to 35 pounds.  (Tr. 33-34.)

•     His hobbies include fishing and hunting, but he can no longer perform those activities due to the weight of a shotgun and his inability to "get out on the boat."  (Tr. 34.)

•     He smokes one to two packs of cigarettes daily.  (Tr. 34, 42.)

•     He has heavy metal poisoning, which results in liver stones.  Other symptoms include rashes, fatigue, and colored urine.  He was diagnosed twelve years earlier.  He was never treated because doctors told him it would require 50 straight days of dialysis, which would only clean "12 percent of it."  (Tr. 35-36.)

•     He can lift 20 pounds comfortably.  (Tr. 39.)

•     He had verbal disputes in the past with co-workers, but had never been terminated due to such a dispute.  (Tr. 40-41.)

•     He cannot fully lift his arms above his head.  (Tr. 41.)

**2.**     **Vocational Expert's Hearing Testimony**

The VE identified Plaintiff's past relevant work as a punch press operator, medium exertion, Dictionary of Occupational Titles ("DOT") 556.382-014; roofer, medium, DOT 866.381-010; construction worker, very heavy, DOT 869.687-026; production worker, medium, DOT 609.685-018; and factory laborer, heavy, DOT 609.684-014.  (Tr. 42-43.)  The ALJ posed the following hypothetical question to the VE:

    This person is male, same education and work background as Mr. Moscorelli.  Person is 51 years of age.  This person can lift/carry 20 pounds occasionally, 10 pounds frequently; can stand/walk six out of eight; can sit six out of eight; occasionally push, pull, and foot pedal.

    This person can occasionally use a ramp or stairs, never a ladder, rope, or a scaffold.  He can frequently balance; occasionally stoop; never kneel; occasionally crouch; never crawl.

    This person can reach head -- only occasionally overhead - - can

9

reach only occasionally overhead; but can frequently handle, finger, and feel.  Visual capabilities are all frequent; same with communication skills.

This person should avoid high concentrations of smoke, fumes, dusts, and pollutants; should avoid dangerous machinery and unprotected heights.  This person should have only superficial interpersonal interactions with the public, co-workers, and supervisors.

This is not to exclude contact.  On the contrary, the person may be actually around may [sic] people during the day, but the time spent with each one should be very short, and it should be for a definite purpose.  And that's it.

(Tr. 43-44.)

The VE testified that such an individual could not perform any of Plaintiff's past relevant work.  (Tr. 44.)  However, the VE identified the following examples as jobs that such an individual could perform: *cashier*, light exertion, DOT 311.677-010 with 4,900 jobs locally, 29,000 in Ohio, and 816,000 nationally; *dining room attendant*, light, DOT 311.677-010 with 750 jobs locally, 3,400 in Ohio, and 114,000 nationally; and *counter clerk*, light, DOT 249.366-010 with 1,000 jobs locally, 5,500 in Ohio, and 105,000 nationally.  (Tr. 44-45.)

The ALJ posed a second hypothetical incorporating all the aforementioned limitations with one change – the hypothetical individual could stand/walk for only four hours in an 8-hour workday.  (Tr. 45.)  The VE again indicated that such an individual could not perform any of Plaintiff's past relevant work, but identified the following new set of jobs such an individual could perform: *office helper*, light, DOT 239.567-010 with 410 jobs locally, 2,000 in Ohio, and 83,000 nationally; *order filler*, light, DOT 222.487-014 with 900 jobs locally, 5,700 in Ohio, and 142,000 nationally; and *school bus monitor*, light, DOT 372.667-042 with 250 jobs locally, 2,000 in Ohio, and 70,000,

10

nationally.  (Tr. 45.)

When asked if an individual who was off task 15 percent of the workday or who was absent two days a moth was employable, the VE testified in the negative.  (Tr. 46.)

The ALJ indicated that the form provided by Dr. Brandt [sic] was problematic because it was unclear what is meant by slight, moderate, and extreme limitations.  (Tr. 48.)  Plaintiff's counsel agreed, and asked for an opportunity to have Dr. Brant clarify those statements.  (*Id*.)  Plaintiff was given thirty days.[5]  (*Id*.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks

---

[5]  The ALJ held the hearing on December 17, 2013 (Tr. 12) and issued his decision on March 17, 2014.  (Tr. 21.)  Plaintiff presented to Dr. Verdun on March 25, 2014 (Tr. 316) and first presented his "new" evidence to the Appeals Council on January 9, 2015.  (Tr. 298.)

disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  Mr. Moscorelli meets the insured status requirements of the Social Security Act through September 30, 2014.

2.  Mr. Moscorelli has not engaged in substantial gainful activity since March 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  Mr. Moscorelli has the following severe impairments: degenerative disc disease of the lumbar spine with sciatica, bilateral shoulder pain and dysthymia (20 CFR 404.1520(c)).

4.  Mr. Moscorelli does not have an impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
(20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I find that Mr.
    Moscorelli has the residual functional capacity to perform light
    work, meaning he can lift and carry 10 pounds frequently and 20
    pounds occasionally.  He can sit, stand, and walk for six hours in
    an eight hour workday as defined in 20 CFR 404.1567(b) except he
    can occasionally push and pull foot pedals.  He can never climb
    ladders, ropes, or scaffolds, kneel, or crawl.  He can occasionally
    climb ramps and stairs, stoop, crouch, and reach.  He can
    frequently handle, finger, feel, see, hear, and speak.  He cannot
    work in high concentrations of smokes and fumes.  He cannot work
    near hazards or at heights.  He can have superficial interaction with
    the public and coworkers.

6.  Mr. Moscorelli is unable to perform any past relevant work (20 CFR
    404.1565).

7.  Mr. Moscorelli was born on July 28, 1962 and was 49 years old,
    which is defined as a younger individual age 18-49, on the alleged
    disability onset date.  Mr. Moscorelli subsequently changed age
    category to closely approaching advanced age (20 CFR 404.1563).

8.  Mr. Moscorelli has at least a high school education and is able to
    communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of
    disability as using the Medical-Vocational Rules as a framework
    supports a finding that Mr. Moscorelli is "not disabled," whether or
    not Mr. Moscorelli has transferable job skills (See SSR 82-41 and
    20 CFR Part 404, Subpart P, Appendix 2).

10. Considering Mr. Moscorelli's age, education, work experience, and
    residual functional capacity, there are jobs that exist in significant
    numbers in the national economy that Mr. Moscorelli can perform
    (20 CFR 404.1569 and 404.1569(a)).

11. Mr. Moscorelli has not been under a disability, as defined in the
    Social Security Act, from March 1, 2012, through the date of this
    decision (20 CFR 404.1520(g)).

(Tr. 14-21.)

## V.  LAW & ANALYSIS

### A.      Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

14

### B.      Plaintiff's Assignments of Error

#### 1.      Listing 1.04A

In his second assignment of error, Plaintiff asserts the ALJ erred in failing to conduct a meaningful review at Step Three of the sequential evaluation.  (Doc. No. 13 at 14-17.)  Relying on *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 414 (6th Cir. 2011), Plaintiff asserts the ALJ failed to sufficiently evaluate the medical evidence regarding Plaintiff's back impairments and compare them to the requirements of Listing 1.04A.  (Doc. No. 13 at 14-17.)  Specifically, Plaintiff argues the ALJ mistakenly applied the criteria of Listing 1.02 despite purporting to address Listing 1.04A.  (*Id*. at 14.)  At the hearing, Plaintiff expressly argued that his impairments met Listing 1.04A.  (Tr. 46.)

Conversely, the Commissioner maintains there is insufficient evidence to satisfy the criteria for Listing 1.04A, noting that none of the doctors who provided opinions indicated that Plaintiff met or equaled the listing.  (Doc. No. 15 at 11-2.)  Thus, the Commissioner argues the ALJ reasonably determined that Plaintiff did not meet or equal Listing 1.04A.  (*Id*.)

At Step Three, a claimant will be found disabled if her impairment meets or equals one of the Listed Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 Fed. App'x 488 (6th Cir. 2010).  The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. §§ 404.1525(a), 416.925(a).

15

Therefore, if a claimant meets the requirements of a Listed Impairment, as well as the durational requirement, he or she will be deemed conclusively disabled and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."  20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3).  At the third step, the burden remains on the claimant to produce evidence to establish that his or her impairments meet or are medically equivalent to a listed impairment.  *See e.g. Lett v. Colvin*, 2015 WL 853425 at * 15 (N.D. Ohio Feb. 26, 2015) (Limbert, M.J.) (*citing Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)); *Snyder v. Comm'r of Soc. Sec.*, 2014 WL 6687227 at * 7 (N.D. Ohio Nov. 26, 2014) (Pearson, J.). A claimant must satisfy *all* of the criteria to "meet" the listing. *Id*.; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).  However, a claimant is also disabled if her impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §§ 404.1526(a), 416.926(a).

This case is distinguishable from the Sixth Circuit's holding in *Reynolds* upon which Plaintiff relies.  424 Fed. App'x at 415.  In *Reynolds*, the Court of Appeals was reviewing a decision wherein the ALJ concluded that the claimant did not meet or equal a listing in sections 1.00 or 12.00.  *Id*.  Although the ALJ proceeded to analyze whether the claimant met a listing under 12.00, no such analysis occurred with respect to any listing under 1.00 and the ALJ proceeded directly to the remaining steps in the sequential analysis.  *Id*.  The *Reynolds* court found the ALJ "skipped an entire step of

16

the necessary analysis" and the error was not harmless.  *Id*. at 415-16.  Here, by

contrast, the ALJ's decision addressed Listing 1.04A as follows:

> There is no evidence the severity of Mr. Moscorelli's musculoskeletal impairments meets or medically equals any of the criteria described in Section 1.04 as discussed below in the residual functional capacity.  The medical evidence does not reveal significant disorganization of motor function into extremities and no muscle weakness or atrophy.  Mr. Moscorelli was not prescribed and does not use ambulatory aids.  Mr. Moscorelli does not use a walker, two crutches, or two canes.

(Tr. 14.)

As this Court understands Plaintiff's argument, he believes this case is akin to

*Reynolds* because the ALJ, while purporting to perform an analysis with respect to

Listing 1.04, instead mistakenly applied the criteria of Listing 1.02.  (Doc. No. 13 at 14.)

Therefore, Plaintiff asserts, the ALJ's analysis is so deficient as to be the equivalent of

no analysis at all.  Unfortunately, the Commissioner's brief does not squarely address

Plaintiff's argument that the ALJ allegedly applied the wrong criteria.  (Doc. No. 15 at

11-12.)  Instead, the ALJ's brief consists primarily of a *post hoc* rationalization of the

ALJ's decision.  This is especially troubling as the Court finds no merit to Plaintiff's

argument that the incorrect criteria was applied.  Listing 1.04A, the specific sub-listing

which Plaintiff argues should have been addressed states as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. ***With***:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss ***and***, if there is involvement of the lower back,

positive straight-leg raising test (sitting and supine);[6]

20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis added).

The ALJ expressly found that the medical evidence of record did not reveal "significant disorganization of motor function into extremities" and also did not support a finding of "muscle weakness or atrophy." (Tr. 14.) While the ALJ's language does not precisely mimic the language of Listing 1.04A, this discussion is sufficiently similar to the requirement that a claimant must show "motor loss (atrophy with associated muscle weakness or muscle weakness)" in order to meet the listing. As such, the holding from *Reynolds* is inapplicable because the ALJ expressly considered Listing 1.04 and found that Plaintiff did not meet all of the requisite criteria because evidence of motor loss was lacking.[7] If it is Plaintiff's view that the ALJ was required to discuss *all* the criteria, Plaintiff cites no authority for such a proposition. Indeed, in this Court's view, where the criteria of a listing is written in the conjunctive, a finding that a single criterium is not satisfied constitutes a sufficient analysis.

To the extent Plaintiff argues that substantial evidence does not support the

---

[6] Listing 1.04 also contains subparts B and C. A claimant satisfies Listing 1.04 if he or she meets the threshold requirements of the listing *and* the criteria set forth in A, B *or* C. In his Brief, Plaintiff quotes Listing 1.04A and argues the ALJ erred in failing to sufficiently evaluate whether he met this particular Listing. As Plaintiff has not raised any argument with respect to Listings 1.04B or 1.04C, those sections will not be considered.

[7] Plaintiff's belief that the ALJ applied the criteria of Listing 1.02 is presumably based on the discussion of Plaintiff's ability to ambulate without assistive devices. While the inability to ambulate effectively is a requirement of Listing 1.02A, it is also a requirement of 1.04C. The decision addresses Listing 1.04 generally, without specifically differentiating between the A and C criteria. Discussing the criteria of the two separate subparts of the listing in the same paragraph, without differentiation, is not cause for remand.

18

ALJ's finding that there was insufficient evidence of muscle weakness or atrophy, the Court disagrees.  Plaintiff's brief points to three pages of the record that he believes support a contrary finding.  (Doc. No. 13 at 16, *citing* Tr. 250-51, 293, Exhs. 5F & 10F.) Plaintiff, however, does not actually attempt to explain how these pages of the record support motor loss.

Exhibit 5F contains the opinions of consultative examiner, Dr. Paras.  (Tr. 249-251.)  Dr. Paras stated that Plaintiff had "[n]o motor or sensory or cerebellar deficits, except for those motor deficits noted during manual muscle testing and range of motion examination."  (Tr. 250.)  Dr. Paras's discussion of manual muscle testing and range of motion examination identifies pain and limited range of motion, but does not identify atrophy or muscle weakness.  (*Id*.)  Plaintiff's ability to grasp, manipulate, pinch, and perform fine coordination were all normal.  (Tr. 251.)  Plaintiff scored a "4" on all muscle tests on a scale of 0 through 5.  (*Id*.)  While a score of "5" is considered normal, a score of "4" is considered "good," and it was not unreasonable for the ALJ to conclude that Dr. Paras's examination did not support the required atrophy or muscle weakness.[8]

Exhibit 10F contains opinions from a one-time examination conducted by Dr. Brant.  (Tr. 291-95.)  Dr. Brant's strength testing resulted in some lower scores of 2 or 3 (on a scale of "absent - 5") with respect to Plaintiff's ability to grip and the strength in his knees, hips, and ankles.  (Tr. 293.)  However, later in the opinion, the ALJ generally ascribed only "moderate weight to the one-time examination ... by Gregory Brant, D.O."

---

[8]  Dr. Paras indicated that the muscle testing results were unreliable due to Plaintiff's pain.  It is unclear whether a reliable examination would yield better or worse results. Dr. Paras also did not opine that any listing was met, concluding Plaintiff could perform light work.  (Tr. 250-51.)

19

(Tr. 19.)  Plaintiff has not challenged the weight the ALJ ascribed to Dr. Brant.

For the foregoing reasons, the ALJ sufficiently addressed Listing 1.04A and the ALJ's reasons for finding the listing requirements were not satisfied are supported by the record.  As such, Plaintiff's assignment of error is without merit.

## 2.    RFC and the Opinions of Psychological Consultants

Plaintiff also argues that the ALJ erred by failing to give any explanation as to why he did not include functional limitations assessed by State Agency psychological consultants Dr. Rudy and Dr. Hoffman in the RFC.  (Doc. No. 13 at 17-19.)   The Commissioner asserts that the ALJ appropriately indicated that these non-examining opinions were only entitled to "some weight" and instead gave great weight to examining psychologist Mr. Halas.  (Doc. No. 15 at 12-14.)

RFC is an indication of a claimant's work-related abilities despite his limitations. *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. § 416.945(a), and must consider all of a claimant's medically determinable impairments, both individually and in combination, S.S.R. 96-8p.  While RFC is for the ALJ to determine, it is well established that the claimant bears the burden of establishing the impairments that determine his RFC.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments. This determination is usually made at stages one

through four [of the sequential process for determining whether a claimant is disabled],

when the claimant is proving the extent of his impairments.")

Furthermore, it is well established that an ALJ is not required to discuss each

and every piece of evidence in the record for his decision to stand.  *See, e.g., Thacker*

*v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).  However, where the

opinion of a medical source contradicts his RFC finding, an ALJ must explain why he

did not include its limitations in his determination of a claimant's RFC.  *See, e.g.,*

*Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.) ("In rendering

his RFC decision, the ALJ must give some indication of the evidence upon which he is

relying, and he may not ignore evidence that does not support his decision, especially

when that evidence, if accepted, would change his analysis.").  Social Security Ruling

96-8p provides, "[t]he RFC assessment must always consider and address medical

source opinions.  If the RFC assessment conflicts with an opinion from a medical

source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p,

1996 WL 374184, *7 (July 2, 1996).

Specifically, Plaintiff contends that the ALJ failed to explain why he did not

include Dr. Rudy's July 25, 2012 opinion that he was "limited to simple and routine

tasks in an environment without frequent social demands or strict quota/production

demands."[9]  (Doc. No. 13 at 18, *citing* Tr. 59-60, Exh. 1A.)  Plaintiff also takes issue

with the lack of explanation with respect to why Dr. Hoffman's November 19, 2012

opinion was similarly excluded from the RFC.  (Doc. No. 13 at 18, *citing* Tr.  73-74, Exh.

---

[9]  The quoted opinion is actually dated July 9, 2012 – the same date clinical psychologist
Halas performed his consultative examination.  (Tr. 60, 244.)

21

2A.)  This opinion states that Plaintiff should be "limited to short cycle work in an environment without frequent social demands with coworkers or strict quota/production demands," and that he "should not work directly with the general public.  Work should be routine."  (Tr. 73-74.)

The ALJ addressed these opinions as follows:

> I give some weight to the assessments of the State Agency psychologists [Exhibits I A and 2A].  They determined Mr. Moscorelli was limited to simple and routine tasks and short cycle work in an environment without frequent social demands with coworkers or strict quota or production demands.  The updated evidence changed the assessments.  *Great weight is given to the opinion of the consultative psychological examiner, Mr. Halas*, on July 9, 2012 who rated a GAF of 45- 55 [Exhibit 4F].  He noted that he diagnosed Mr. Moscorelli with dysthymia, and that diagnosis is generally consistent with the evidence in this case.  Mr. Moscorelli does not receive ongoing mental health care, nor was he hospitalized for a mental problem.  Mr. Halas also diagnosed alcohol abuse and a mixed personality disorder.  There is no evidence in the record that Mr. Moscorelli is significantly affected by a drug or alcohol problem.

(Tr. 19) (emphasis added).

The RFC limits Plaintiff to only "superficial interaction with the public and coworkers."  (Tr. 16.)  Plaintiff fails to explain how this limitation does not sufficiently incorporate the social interaction limitations assessed by the State Agency doctors.  Nonetheless, Plaintiff is correct that the RFC does not contain prohibitions against strict quotas or production demands, nor does it limit Plaintiff to routine work.

The ALJ expressly found that Plaintiff's mental health symptoms have only a moderate effect on his social limitations.  (Tr. 19.)  At the hearing, Plaintiff's testimony related only to physical impairments.  (Tr. 30-42.)  The examining clinical psychologist, Mr. Halas, also noted that Plaintiff denied any psychiatric or psychological interventions and Plaintiff had not been seen or treated for psychological and/or emotional problems.

22

(Tr. 245.)  Moreover, Mr. Halas's opinion does not contain any pace or production based restrictions, specifically finding that Plaintiff would have little or no difficulty maintaining attention, concentration, persistence, and pace.  (Tr. 244-47.)  On July 25, 2012, State Agency consultant Dr. Rudy completed a mental RFC assessment opining that Plaintiff had only *moderate* limitations with respect to maintaining concentration and attention for extended periods and was not significantly limited in his ability to sustain an ordinary routine without supervision.  (Tr. 60.)  Dr. Rudy also noted Plaintiff was *moderately* limited in his ability to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 60.)  Thereafter, on November 19, 2012, non-examining State Agency consultant Dr. Hoffman, in her assessment of the "B" criteria, indicated that Plaintiff had only *mild* difficulties in maintaining concentration, persistence, or pace.  (Tr. 69.)  As such, the ALJ's decision to exclude prohibitions against strict quotas or production demands was supported by substantial evidence.

Furthermore, although the ALJ's decision certainly could have benefitted from a more precise explanation, the ALJ's explanation was not lacking.  For example, the ALJ unequivocally ascribed "great weight" to the opinion of an examining source, Mr. Halas, (who did not opine any pace or production-based restrictions).  Clearly, the ALJ determined that the greater limitations assessed by the opinions of non-examining sources Dr. Rudy and Dr. Hoffman were not warranted.  (Tr. 19.)  The explanation requirement "should not be confused with the standard required for the weight ascribed to treating sources [as] [t]he Sixth Circuit has held that the regulation requiring an ALJ to provide 'good reasons' for the weight given a treating physician's opinion does not

23

apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another." *See Alvarado v. Colvin*, 2016 U.S. Dist. LEXIS 27117 at **10-11 (N.D. Ohio, Jan. 5, 2016) (White, M.J.) (*citing Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006), *adopted by* 2016 U.S. Dist. LEXIS 27111 (N.D. Ohio Mar. 3, 2016); *see also Allums v. Colvin*, 2015 U.S. Dist. LEXIS 169408 at **64-65 (N.D. Ohio Nov. 25, 2015) (Limbert, M.J.) (also citing *Kornecky* for the same proposition); *Pierce v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 147531 at *14 (S.D. Ohio Oct. 30, 2015) ("courts have held that the failure to provide an explicit rationale for choosing between the competing opinions of non-treating sources is not necessarily a fatal error.")

In his reply, Plaintiff takes issue with the ALJ's finding that the updated evidence changed the assessments and asserts that Halas's opinion predates the opinions of the State Agency doctors.  (Doc. No. 16.)  Plaintiff's challenge is without merit as the State Agency opinions he references all relate to Plaintiff' condition on July 9, 2012.[10]  (Tr. 59-60, 73-74, 244-47.)

As such, Plaintiff's assignment of error is without merit.

### 3.    Sentence Six Remand

Finally, Plaintiff argues that x-rays and MRIs of his lumbar spine and shoulders, as well as the treatment records of Dr. Verdun, constitute new and material evidence warranting a sentence six remand.  (Doc. No. 13 at 10-14.)  The Commissioner argues that this evidence is not new.  (Doc. No. 15 at 9-10.)  In addition, the Commissioner

---

[10]  Though Dr. Hoffman's electronic signature on the record is *dated* November 19, 2012 and appears on the same page as the opinion setting forth Plaintiff's mental limitations, the opinions themselves reflect the Plaintiff's condition on July 9, 2012.  (Tr. 73-74.)

contends that Plaintiff has failed to demonstrate good cause for failing to submit the evidence or obtain testing earlier.  (*Id.* at 10-11.)

The Sixth Circuit has repeatedly held that "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *accord Cox v. Comm'r of Soc. Sec.*, 615 Fed. App'x. 254, 261 (6th Cir. 2015) ("After the ALJ rendered her decision, Appellant submitted additional evidence from Dr. Tucker to the Appeals Council, including additional treatment notes and an opinion regarding Appellant's limitations. A court cannot consider such a belated submission when reviewing an ALJ's decision.")  However, under 42 U.S.C. § 405(g), a court "may . . . remand [a] case to the Commissioner . . .  for further action by the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

The party seeking remand under § 405(g) bears the burden of showing that remand is appropriate.  *See, e.g., Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  Evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal quotation marks omitted).  "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different

disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711.  "'Good cause' can be shown only by demonstrating a reasonable justification for failing to present the evidence at the administrative hearing." *Kepke v. Comm'r of Soc. Sec.*, 2016 U.S. App. LEXIS 601 (6ᵗʰ Cir. Jan. 12, 2016) (*citing Foster*, 279 F.3d at 357)).

Here, the evidence at issue was plainly not in existence at the time of the hearing, thus the Court will consider it "new" for sentence six purposes.  The Commissioner does not challenge the materiality of the new evidence.  (Doc. No. 15 at 9-11.)  The Court declines to decide this issue, but will assume, for the sake of argument, that the evidence is material and proceed directly to the "good cause" requirement.[11]

Plaintiff's brief fails to set forth any good cause.  While the brief distinctly identifies "good cause" as a required element of a sentence six remand and cites some applicable law, the only factual reason offered is that "good cause exists for not presenting Dr. Verdun's findings because they did not exist at the time the ALJ issued his March 17, 2014 decision."  (Doc. No. 13 at 14.)  Plaintiff's reply contains no discussion concerning sentence six remand, let alone the good cause requirement.  (Doc. No. 16.)  Plaintiff's argument – that the "new" nature of the evidence, which post-

---

[11]  Plaintiff has not actually demonstrated that the new evidence is "material."  The x-rays, MRIs, and Dr. Verdun's treatment notes do not in and of themselves demonstrate a reasonable probability that the ALJ would have reached a different conclusion as to Listing 1.04.  As discussed above, to meet or equal the listing, a claimant must satisfy all the criteria.  Listing 1.04A requires more than a spinal disorder with nerve root compression.  Finally, Plaintiff's contention that the new evidence would have demonstrated a limitation to no more than sedentary work is pure conjecture, as the new evidence does not contain any functional limitations.

dates, inherently establishes "good cause" – is circular and would render the two factors redundant.  *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964 (6th Cir. 1986) (observing that, in the Sixth Circuit, medical reports post-dating the decision do not alone satisfy the good cause requirement); *Brace v. Comm'r of Soc. Sec.*, 97 Fed. Appx. 589, 592 (6th Cir. 2004) (arranging tests just prior to a claimant's ALJ hearing did not establish good cause to warrant a remand).

Earlier in his brief, Plaintiff does note that he did not have insurance and was waiting for Medicaid approval by the Ohio Department of Job and Family Services ("ODJFS").  (Doc. No. 13 at 12.)  In *Guill-McCoy v. Colvin*, 2014 U.S. Dist. LEXIS 169821 at **5-8 (W.D. Ky. Dec. 8, 2014), the plaintiff similarly did not expressly show "good cause," but  mentioned in passing, with no supporting affidavit, that she lacked health insurance which prevented her from obtaining treatment sooner.  The *Guill-McCoy* court found that "claimants always have the ultimate burden of submitting evidence in support of their disability claims.... [and] 'the record does not reflect the factors that would distinguish [Plaintiff's situation] from the majority of near destitute claimants who timely submit medical evidence' in support of their claims." 2014 LEXIS 169821 at **7-8 (*quoting Walton v. Astrue*, 773 F. Supp. 2d 742 (N.D. Ohio 2011 ) (Pearson, J.)); *see also Robinette v. Astrue*, 2012 U.S. Dist. LEXIS 170540 (E.D. Ky. Nov. 29, 2012) (finding sentence six remand based on post-hearing MRI and x-ray was not warranted where the plaintiff failed to show good cause for not procuring tests earlier).  Furthermore, Plaintiff does not explain how he was able to afford the treatment after the hearing (*i.e.* whether he finally qualified for insurance through ODJFS), does

not state when he initiated the process of trying to obtain insurance, does not document any efforts at seeking treatment through free or discounted clinics, and does not explain how he managed to afford chiropractic care during this interval.

Therefore, the Court recommends that a sentence six remand is not warranted as Plaintiff has failed to demonstrate "good cause" for not presenting the evidence earlier.

## VI.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: March 28, 2016

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**